J-S06035-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA : | IN THE SUPERIOR COURT OF |
| : | PENNSYLVANIA |
| : | |
| v. : | |
| : | |
| : | |
| : | |
| BRANDON SAWYER, : | |
| : | |
| Appellant : | No. 1370 EDA 2017 |
| : | |

Appeal from the PCRA Order April 3, 2017
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0012941-2011

BEFORE:  BOWES, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED APRIL 13, 2018**

Brandon Sawyer ("Sawyer") appeals from the Order dismissing his

Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1]

We affirm.

This Court previously summarized the factual history of this case as

follows:

> At approximately 1[:00] o'clock in the morning of November
> 4, 2008, Philadelphia Police Officer Sterling Staton [("Officer
> Staton")] and his partner, Officer Vance, were called to 54th
> Street and Florence Avenue in West Philadelphia.  When they
> arrived at the scene, Officer Staton observed the body of the
> victim in this case, Charmaine McGuilken [(hereinafter
> "McGuilken" or "the decedent")], lying beneath a pay phone,
> unresponsive and bleeding from her face.  She had the telephone
> handset in her hand, and the cord connecting it to the phone had
> been severed.  When the medics arrived a few minutes later, they

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

pronounced her deceased at the scene. N.T. October 22, 2013, pp. 56-69.

Dr. Sam Gulino [("Dr. Gulino")], Chief Medical Examiner in the Office of the Medical Examiner of Philadelphia, performed an autopsy on the decedent …. The decedent sustained two perforating gunshot wounds, to the right side of her face and to her chest. [*Id.* at] 76-100. Officer John Cannon [("Officer Cannon")] of the Firearms Identification Unit gave expert testimony that the ballistics evidence recovered at the scene and from the Medical Examiner all came from the same firearm. *Id.* at 153-164.

Corey Williams [("Williams")] lived in Southwest Philadelphia in 2008, where he knew two men named Aasim Stibbins [("Stibbins")] and Aaron McCallum [("McCallum")]. [] McCallum, also known as Beano, is [Sawyer's] cousin. On November 4th, 2008, at approximately 1[:00] in the morning, Williams was selling crack cocaine on the 5400 block of Belmar Terrace, which is a little less than two full blocks east of Florence Avenue. He heard shots, but he stayed on Belmar Terrace because they sounded sufficiently far away that he did not fear for himself. Shortly thereafter, he heard police cars rushing to the scene of the shooting and saw [Sawyer], Stibbins, and McCallum emerge from an alleyway, looking shocked and fearful. The three men went to Stibbins'[s] house. Earlier that day, Williams had seen McCallum with a gun. He knew McCallum to own two guns, a 40-caliber and a 9-millimeter. *Id.* at 170-181.

At some point after the shooting, Williams was at Stibbins'[s] house speaking with [Sawyer] and McCallum. [Sawyer] told him that he shot [] McGuilken in the head, and he and McCallum laughed off the incident. [Sawyer] said he came out of the alleyway, he shot [the decedent] in the head, and when he shot her the receiver on the phone came off. Stibbins seemed more troubled by what had happened. *Id.* at 182-187.

On November 6, 2008, Detective Keith Scott [("Detective Scott")] and his partner were working near 55th Street and Florence Avenue. He saw [Sawyer] and attempted to stop him, and [Sawyer] ran from him for approximately 100 feet. [Detective] Scott overcame [Sawyer] and took him into custody on an unrelated matter. N.T. October 23, 2013, pp. 36-40.

On February 9, 2011, Williams was arrested for selling narcotics. In order to avoid harsh penalties for his narcotics involvement, Williams agreed to give a statement about the murder of [] McGuilken. He told homicide detectives what he remembered from the night of the shooting, and from [Sawyer's] confession. N.T. October 22, 2013, pp. 188-197.

[] Stibbins knew the decedent, who was his mother's friend. On February 16th, 2011, he gave a statement to police in which he implicated [Sawyer]. In his statement, he says that he was leaving a woman's house sometime after midnight and saw [Sawyer] and [] McCallum coming out of a vacant lot, and then saw [Sawyer] raise a gun and shoot the decedent while she was on the phone. N.T. October 23, 2013, pp. 47-79.

On November 8, 2011, Stibbins and his lawyer signed a Memorandum of Agreement with the District Attorney memorializing their agreement that Stibbins [would] testify against [Sawyer] in this case, and that the District Attorney would agree to a sentence of time served on Stibbins'[s] open gun case. Stibbins testified at [Sawyer's] preliminary hearing that he saw [Sawyer] shoot the decedent. *Id.* at 104-145.

On the witness stand, [Stibbins] denied being present for [decedent's] shooting or involved in any way. Rather, he claimed that the detectives who took his statement used [] Williams'[s] statement in order to fabricate a statement for him as well, and that he was not present when the shooting occurred but he was threatened with being charged in this case if he did not put himself at the scene as a witness. *Id.* at 47-79.

On March 8, 2011, Tyree Thomas [("Thomas")] gave a statement to police in which he reported that in February of 2009[,] he was at [] Stibbins'[s] house when Stibbins told him about the shooting. Stibbins said that "the boy, [Sawyer], shot the fiend in the head while she was on the phone" and that Stibbins had witnessed the shooting, having walked up to the intersection just as it was taking place. *Id.* at 211-224.

Tevin Clark [("Clark")], a friend of [] Stibbins, gave a statement on February 17, 2011[,] that Stibbins had told him that [Sawyer] shot the decedent in the eye without provocation, and that Stibbins witnessed the shooting but was not involved. At

trial, he claimed that the statement was inaccurate. *Id.* at 211-232.

At trial, the Commonwealth played recordings of two phone calls that [Sawyer] made while he was in custody awaiting trial. In the first one, he discusses the fact that "Corey" (presumably [] Williams) gave a statement in this case and "told" in some other cases as well. In the second call, he declares that he has statements made by Williams and "Diddy" and "two other young bouls [*sic*]" and "I'm' a send 'em jawns out tonight, you heard me?" N.T. October 28, 2013, pp. 59; Commonwealth Exhibit 39 (transcripts).

*Commonwealth v. Sawyer*, 122 A.3d 1118 (Pa. Super. 2015) (unpublished memorandum at 1-6) (citation omitted).

A jury found Sawyer guilty of first-degree murder, carrying a firearm on public streets or property in Philadelphia, and possessing an instrument of crime.[2] Thereafter, the trial court sentenced Sawyer to a 42½ years to life in prison for his conviction of first-degree murder,[3] and concurrent prison terms of one to two years for his convictions of carrying a firearm on the streets or property in Philadelphia and possessing an instrument of crime. This Court affirmed Sawyer's judgment of sentence, after which the Pennsylvania Supreme Court denied Sawyer's Petition for allowance of appeal. *See Sawyer*, 122 A.3d 1118 (Pa. Super. 2015) (unpublished memorandum), *appeal denied* 128 A.3d 1206 (Pa. 2015).

---

[2] *See* 18 Pa.C.S.A. §§ 2502, 6108, 907.

[3] Sawyer was 15 years old at the time of the murder.

- 4 -

On November 2, 2016, Sawyer timely filed the instant PCRA Petition, his first. After the appointment of counsel and an evidentiary hearing, the PCRA court dismissed Sawyer's Petition. Thereafter, Sawyer filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Sawyer presents the following claims for our review:

> I. Were [Sawyer's] rights pursuant to the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the PA Constitution violated in that counsel failed to investigate and present an available witness and evidence that would have corroborated Stibbins['s] recantation at trial?
>
> II. Were [Sawyer's] rights pursuant to the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the PA Constitution [] violated by counsel['s] failure to investigate and present available witnesses and evidence of an alternative suspect and the Commonwealth's abandonment of investigation of that person?
>
> III. Were [Sawyer's] rights pursuant to the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the PA Constitution [] violated by trial counsel's failure to obtain and present available evidence that would prove that [] Williams['s] testimony that he had a conversation with [Sawyer] was contrary to the incontrovertible physical evidence of record and should be suppressed?
>
> IV. Were [Sawyer's] rights pursuant to the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the PA Constitution [] violated by counsel's ineffective failure to object to the hearsay testimony of [] Clark?
>
> V. Were [Sawyer's] constitutional right to due process of law and a fair trial … violated by the cumulative impact

> of trial counsel['s] ineffectiveness in violation of the Sixth Amendment?

Brief for Appellant at 3.

"In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." ***Commonwealth v. Montalvo***, 114 A.3d 401, 409 (Pa. 2015) (citation and internal quotation marks omitted). "Where a PCRA court fails to support its holding with sufficient explanations of the facts and law, or fails to provide an adequate opinion addressing all of the claims raised in a PCRA petition, including factual and credibility disputes, a remand is appropriate." ***Id.*** at 410.

Sawyer first claims that his constitutional right to effective assistance of counsel, pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, section 9 of the Pennsylvania Constitution, was violated by counsel's failure to investigate and present an available witness, and evidence that would have corroborated the recantation testimony of Stibbins. Brief for Appellant at 12. Sawyer directs our attention to Stibbins's trial testimony that the detectives interrogating him, including Detective Pitts, told Stibbins what to say, and corrected his statement about the incident. ***Id.*** at 14. Sawyer asserts that at trial, Stibbins denied telling Clark that Sawyer had shot the victim. ***Id.*** at 15. Sawyer states, "Stibbins testified at the trial that he only gave testimony at the preliminary hearing consistent with [his] statement because the [District Attorney] told him to."

*Id.* In addition, Sawyer contends that at trial, Clark testified that the statement attributed to him was not correct, and he denied having spoken to Williams about the crime. *Id.*

Sawyer asserts that his trial counsel rendered ineffective assistance by not investigating the detectives involved in taking Stibbins's statement, especially Detective Pitts. *Id.* at 15, 17. Sawyer contends that had counsel investigated Detective Pitts,

> she would have learned that [Detective] Pitts has a documented, admissible, pattern and practice of holding suspects and witnesses in isolation, often handcuffed, for prolonged interrogation periods, threatening, bullying and physically and psychologically coercing suspects and witnesses into giving statements that incriminate a pre-ordained suspect. In other words, [Detective] Pitts had a pattern and practice of making the evidence fit the intended suspect[,] as he did in the instant case.

*Id.* at 17. Sawyer contends that Detective Pitts was the subject of six civil lawsuits, each of which accused Detective Pitts of misconduct, including excessive use of force and false arrest. *Id.* at 18. According to Sawyer, the City of Philadelphia settled several lawsuits against Detective Pitts. *Id.* at 18 n.3. Sawyer asserts that an evidentiary hearing is required, during which trial counsel can be questioned about her failure to call Detective Pitts, as well as the men who had filed civil claims against Detective Pitts. *Id.* at 18. Sawyer details the cases against these men, Unique Drayton, Nafis Pinkney and Amin Speaks. *Id.* at 19-21. Sawyer also disputes the PCRA court's conclusion that he did not suffer prejudice from counsel's inaction, and its conclusion that the jury considered and rejected Stibbins's trial recantation testimony. *Id.* at 22.

According to Sawyer, had the evidence of the pattern and practices of Detective Pitts been presented to the jury, it would have corroborated the recantation testimony of Stibbins and Clark. ***Id.*** at 23.

As this Court has explained,

> [t]o be entitled to relief on an ineffectiveness claim, [the petitioner] must prove the underlying claim is of arguable merit, counsel's performance lacked a reasonable basis, and counsel's ineffectiveness caused him prejudice. Prejudice in the context of ineffective assistance of counsel means demonstrating there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. This standard is the same in the PCRA context as when ineffectiveness claims are raised on direct review. Failure to establish any prong of the test will defeat an ineffectiveness claim.

***Commonwealth v. Solano***, 129 A.3d 1156, 1162-63 (Pa. 2015) (citations omitted).

In its Opinion, the PCRA court addressed Sawyer's claim and concluded that it lacks merit. ***See*** PCRA Court Opinion, 5/10/17, at 9-10. The PCRA court's findings are supported in the record, and we discern no abuse of discretion by the PCRA court in rejecting Sawyer's claim. ***See id.*** We therefore affirm on the basis of the PCRA court's Opinion with regard to this

claim.[4]   ***See id.***

In his next claim, Sawyer argues that counsel rendered ineffective assistance by failing to adequately investigate and present available witnesses regarding an alternative suspect, Joseph Brunner ("Brunner"). Brief for Appellant at 24. Sawyer contends that Brunner had a lengthy criminal history involving firearms, drugs and violent crimes. ***Id.*** at 25. Sawyer contends that counsel's trial strategy, *i.e.*, to implicate Stibbins rather than Brunner, was not reasonable. ***Id.*** at 24. Further, Sawyer contends that the circumstantial evidence provided by these witnesses would have established reasonable doubt as to his own involvement. ***Id.*** at 27.

In particular, Sawyer points out that Denise Webster ("Webster"), in her statement to police, observed Brunner running out of Ridgewood Street just minutes after the shooting. ***Id.*** Webster also told police that Brunner carried a silver-colored revolver, and had previously threatened to "Fuck her up[,]" referring to the decedent. ***Id.*** Sawyer also states that his trial counsel was

---

[4] Sawyer also has filed a Petition for Remand based upon newly obtained evidence. Specifically, Sawyer points out other cases in which it was alleged that Detective Pitts had physically assaulted and coerced witnesses. However, this evidence does not contradict the PCRA court's determination that Sawyer "neither alleges that Stibbins was physically coerced by Detective Pitts before giving his statement, nor does he argue that Stibbins would testify that he was." ***See*** PCRA Court Opinion, 5/10/17, at 9. Further, Sawyer does not assert that any of the people allegedly assaulted by Detective Pitts would be available to testify upon remand to the PCRA court. Finally, Sawyer does not explain how this information was not available at the time he filed his PCRA Petition or during the PCRA hearing in 2017. Accordingly, we deny Sawyer's Petition for remand.

aware that Jeanine Jones had told police that she had seen Brunner running through the nearby driveway following the shooting. *Id.* at 29. Similarly, Sawyer points out that LaVerne McCall could have testified regarding animosity between Brunner and the decedent. *Id.* at 30. Sawyer argues that these witnesses would have rebutted the testimony of Detective Morton, who had testified that the case had "gone cold," and that they had no suspect in December 2008. *Id.* at 31. Sawyer takes exception to his trial counsel's failure to investigate Brunner, and should have argued that the police believed that Brunner was the primary suspect. *Id.* at 32. According to Sawyer, "Brunner had both motive and opportunity to kill the victim." *Id.* at 33. Sawyer also disputes the PCRA court's determination that trial counsel's strategic decisions were reasonable. *Id.* at 34.

In its Opinion, the PCRA court addressed this claim and concluded that it lacks merit. *See* PCRA Court Opinion, 5/10/17, at 5-8. We agree with the sound reasoning of the PCRA court, and its conclusion that the claim lacks merit. *See id.* We therefore affirm on the basis of the PCRA court's Opinion with regard to this claim. *See id.*

In his third claim, Sawyer asserts that his trial counsel rendered ineffective assistance by failing to present evidence contradicting Williams's testimony, requiring its suppression. Brief for Appellant at 37. Sawyer states that in Williams's February 9, 2011 statement to police and trial testimony, he recalled an incriminating statement by Sawyer wherein Sawyer referred to

- 10 -

decedent saying that he had "rocked" her and stated, "I shot her in the head."

*Id.* According to Sawyer, he told trial counsel that Williams's statement was

a lie, because Sawyer was in police custody at the time. *Id.* Sawyer disputes

the PCRA court's finding that the claim is frivolous, based upon the parties'

stipulation that Sawyer was not in Philadelphia from November 2008 through

February 2010. *Id.* at 38. In spite of the stipulation, Sawyer argues that his

counsel should have subpoenaed records showing that he was not in

Philadelphia during this time period. *Id.* at 39.

In its Opinion, the PCRA court addressed this claim and concluded that

it lacks merit. *See* PCRA Court Opinion, 5/10/17, at 10-11. We agree with

the sound reasoning of the PCRA court, as expressed in its Opinion, and

discern no abuse of discretion in this regard. *See id.* Accordingly, we affirm

on the basis of the PCRA court's Opinion with regard to this claim. *See id.*

In his fourth claim, Sawyer argues that his counsel rendered ineffective

assistance by not objecting to the hearsay testimony of Clark. Brief for

Appellant at 44. According to Sawyer, his counsel should have objected to

the following statement, wherein the prosecutor read out loud, to Clark,

Clark's prior statement:

> [The Prosecutor, reading from Clark's Statement]: I have a friend
> named [Stibbins]. We've been hanging around together for about
> a year or two. In February of '09[,] I was at [Stibbins's] house
> when he told me about the shooting of the lady at 54th and
> Florence Avenue back in November the year before. [Stibbins]
> told me that the boy, [Sawyer], shot the friend in the head while
> she was on the phone. [Stibbins] told me that Brandon was with
> another guy named Aaron[,] but he didn't say what Aaron did.

[Stibbins] said that he was out there when this happened and he saw what they did. He had just walked up when it happened.

So, [] Clark, my first question is[,] did I get that right? Did I read that accurately?

[Clark]: Yes, you read it accurately.

Q. And that's what's on the statement?

A. Yes.

Q. Do you recall that question and answer?

A. No.

Brief for Appellant at 43 (citation omitted). Sawyer contends that because there was no hearing, there is no evidence as to why counsel failed to object to this hearsay testimony. *Id.* at 44. Sawyer insists that a hearing is necessary, at which time counsel can testify as to his reasons for not objecting to this testimony. *Id.*

In its Opinion, the PCRA court addressed this claim and concluded that it lacks merit. *See* PCRA Court Opinion, 5/10/17, at 11-12. We agree with the sound reasoning of the PCRA court, and affirm on this basis as to Sawyer's fourth claim. *See id.* We additionally note the following.

The record supports the trial court's determination that the statement at issue was offered to impeach the earlier testimony of Stibbins. In addition, our review of the record discloses that the statement at issue was used to impeach Clark's own testimony. At trial, Clark represented that he was under the influence and tired at the time he spoke with homicide detectives on

February 17, 2011. N.T., 10/23/13, at 220. When confronted with each statement that he made to the homicide detectives, Clark could not recall making the statement. *See id.* 220-25 (wherein the prosecutor confronted Clark with each statement that he made to the detectives, and Clark denied remembering his statements). We conclude that the evidence also was properly admitted to refute Clark's claim that he was under the influence at the time he spoke with homicide detectives, and could not recall major portions of his statement. *See id.*

In his fifth and final claim, Sawyer argues that he is entitled to relief based upon the cumulative effect of all of his prior claims. Brief for Appellant at 45. However, because we conclude that the PCRA court did not abuse its discretion or err, Sawyer is not entitled to relief on this claim.

Petition for Remand denied. Order affirmed.

Judge McLaughlin joins the memorandum.

Judge Bowes concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/18

- 13 -

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CRIMINAL TRIAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA     :   CP-51-CR-0012941-2011

            :

            :

v.                    **FILED**        CP-51-CR-0012941-2011 Comm. v. Sawyer, Brandon
Opinion

            :

            MAY **1 0 2017**

BRANDON SAWYER     Office of Judicial Records     |||||||||||||||||||||||||||||||||
                   Appeals/Post Trial          7944991021

**OPINION**

**McDermott, J.**                                         **May 10, 2017**

**Procedural History**

On July 23, 2011, the Petitioner, Brandon Sawyer, was arrested and charged with Murder

and related offenses. On October 29, 2013, after a trial before this Court, a jury convicted the

Petitioner of First-Degree Murder, Carrying a Firearm in Philadelphia, and Possession of an

Instrument of Crime (PIC). On April 10, 2014, this Court sentenced the Petitioner to forty-two

and one-half years to life in prison for First-Degree Murder, as well as concurrent sentences of

one to two years of incarceration for PIC and Carrying a Firearm in Philadelphia.[1] The

Petitioner was fifteen years old at the time of the murder in this case.

The Petitioner appealed and on June 1, 2015, the Superior Court affirmed the Petitioner's

judgment of sentence. On November 24, 2015, the Petitioner's Petition for Allowance of Appeal

was denied.

---

[1] On April 10, 2014, at CP-51-CR-0012798-2010, CP-51-CR-0012799-2010, CP-51-CR-0011761-2011, and CP-51-CR-0011762-2011, this Court accepted the defendant's negotiated guilty plea in four Aggravated Assault cases, with the sentences to be run concurrent to the sentence in this case. He received seven and one-half to fifteen years on each charge of Aggravated Assault, seven and one-half to fifteen years for Conspiracy, and one to two years for each of two charges for Possession of an Instrument of Crime, all to run concurrent to one another and to the sentence in this matter.

On November 2, 2016, the Petitioner filed a timely, counseled Post-Conviction Relief Act ("PCRA") petition, his first. On January 3, 2017, the Commonwealth filed a Motion to Dismiss. On March 17, 2017, this Court held an evidentiary hearing. On April 3, 2017, after hearing argument, this Court dismissed the instant petition. On April 24, 2017, the Petitioner appealed and on May 2, 2017 filed a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b).

## Facts

On direct appeal, the Superior Court adopted this Court's summary of the relevant facts and restated them as follows:

> At approximately 1 o'clock in the morning of November 4, 2008, Philadelphia Police Officer Sterling Staton and his partner, Officer Vance, were called to 54th Street and Florence Avenue in West Philadelphia. When they arrived at the scene, Officer Staton observed the body of the victim in this case, Charmaine McGuilken, lying beneath a pay phone, unresponsive and bleeding from her face. She had the telephone handset in her hand, and the cord connecting it to the phone had been severed. When the medics arrived a few minutes later, they pronounced her deceased at the scene.
>
> Dr. Sam Gulino, Chief Medical Examiner in the Office of the Medical Examiner of Philadelphia, performed an autopsy on the decedent, Charmaine McGuilken. The decedent sustained two perforating gunshot wounds, to the right side of her face and to her chest. Officer John Cannon of the Firearms Identification Unit gave expert testimony that the ballistics evidence recovered at the scene and from the Medical Examiner all came from the same firearm.
>
> Corey Williams lived in Southwest Philadelphia in 2008, where he knew two men named Aasim Stibbins and Aaron McCallum. Aaron McCallum, also known as Beano, is [the Petitioner]'s cousin. On November 4th, 2008, at approximately 1 in the morning, Williams was selling crack cocaine on the 5400 block of Belmar Terrace, which is a little less than two full blocks east of Florence Avenue. He heard shots, but he stayed on Belmar Terrace because they sounded sufficiently far away that he did not fear for himself. Shortly thereafter, he heard police cars rushing to the scene of the shooting and saw [the Petitioner], Stibbins, and McCallum emerge from an alleyway, looking shocked and fearful. The three men went to Stibbins' house. Earlier that day, Williams had seen McCallum

2

with a gun. He knew McCallum to own two guns, a 40-caliber and a 9-millimeter.

At some point after the shooting, Williams was at Stibbins' house speaking with [the Petitioner] and McCallum. [The Petitioner] told him that he shot Charmaine McGuilken in the head, and he and McCallum laughed off the incident. [The Petitioner] said he came out of the alleyway, he shot Charmaine in the head, and when he shot her the receiver on the phone came off. Stibbins seemed more troubled by what had happened.

On November 6, 2008, Detective Keith Scott and his partner were working near 55th Street and Florence Avenue. He saw [the Petitioner] and attempted to stop him, and [the Petitioner] ran from him for approximately 100 feet. Scott overcame him and took him into custody on an unrelated matter.

On February 9, 2011, Williams was arrested for selling narcotics. In order to avoid harsh penalties for his narcotics involvement, Williams agreed to give a statement about the murder of Charmaine McGuilken. He told homicide detectives what he remembered from the night of the shooting, and from [the Petitioner's] confession.

Aasim Stibbins knew the decedent, who was his mother's friend. On February 16th, 2011, he gave a statement to police in which he implicated [the Petitioner]. In his statement, he says that he was leaving a woman's house sometime after midnight and saw [the Petitioner] and Aaron McCallum coming out of a vacant lot, and then saw [the Petitioner] raise a gun and shoot the decedent while she was on the phone.

On November 8, 2011, Stibbins and his lawyer signed a Memorandum of Agreement with the District Attorney memorializing their agreement that Stibbins testify against [the Petitioner] in this case, and that the District Attorney would agree to a sentence of time served on Stibbins' open gun case. Stibbins testified at [the Petitioner's] preliminary hearing that he saw [the Petitioner] shoot the decedent.

On the witness stand, he denied being present for her shooting or involved in any way. Rather, he claimed that the detectives who took his statement used Corey Williams' statement in order to fabricate a statement for him as well, and that he was not present when the shooting occurred but he was threatened with being charged in this case if he did not put himself at the scene as a witness.

On March 8, 2011, Tyree Thomas gave a statement to police in which he reported that in February of 2009 he was at Aasim Stibbins' house when Stibbins told him about the shooting. Stibbins said that "the boy, Brandon, shot the fiend in the head while she was on the phone" and that Stibbins had witnessed the shooting, having walked up to the intersection just as it was taking place.

3

Tevin Clark, a friend of Aasim Stibbins, gave a statement on February 17, 2011 that Stibbins had told him that [the Petitioner] shot the decedent in the eye without provocation, and that Stibbins witnessed the shooting but was not involved. At trial, he claimed that the statement was inaccurate.

At trial, the Commonwealth played recordings of two phone calls that [the Petitioner] made while he was in custody awaiting trial. In the first one, he discusses the fact that "Corey" (presumably Corey Williams) gave a statement in this case and "told" in some other cases as well. In the second call, he declares that he has statements made by Williams and "Diddy" and "two other young bouls" and "I'm'a send 'em jawns out tonight, you heard me?"

*Commonwealth v. Brandon Sawyer*, 1403 EDA 2014 at *1–4 (Pa. Super. June 1, 2015) (non-precedential decision) (citations and footnotes omitted).

## Discussion

The Petitioner raised five issues for review, arguing that trial counsel were ineffective for failing to investigate and present: (1) witnesses to establish that alternative suspect Joseph Brunner was the perpetrator; (2) Detective Pitts, who would have corroborated Stibbins' recantation (based on impeachment evidence concerning his history of coercing witnesses); and, (3) physical evidence proving that the Petitioner was in custody when he allegedly confessed to Williams. The Petitioner further avers the trial counsel was ineffective for failing to object to Tevin Clark's hearsay testimony and that the cumulative effect of counsel's ineffectiveness prejudiced him.

To warrant relief based on an ineffectiveness claim, a petitioner must show that such ineffectiveness "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Bardo*, 105 A.3d 678, 684 (Pa. 2014); 42 Pa.C.S. § 9543(a)(2)(ii). Counsel is presumed to have rendered effective assistance. *Commonwealth v. Weiss*, 81 A.3d 767, 783 (Pa. 2013) (*citing Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117 (Pa. 2012)).

4

To overcome the presumption, the Petitioner has to satisfy the performance and prejudice test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). The Supreme Court of Pennsylvania has applied the *Strickland* test by looking to three elements, whether (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner has shown that he suffered prejudice as a result of counsel's lapse, *i.e.*, that there is a reasonable probability that the result of the proceeding would have been different. *Commonwealth v. Pierce,* 527 A.2d 973, 975 (Pa. 1987). If a claim fails under any necessary element of the *Strickland/Pierce* test, the court may proceed to that element first. *Commonwealth v. Bennett*, 57 A.3d 1185, 1195–1196 (Pa. 2011). Counsel will not be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. Rivera*, 108 A.3d 779, 789 (Pa. 2014) (*citing Commonwealth v. Jones*, 912 A.2d 268, 278 (Pa. 2006)).

The Petitioner claims that trial counsel were ineffective for failing to investigate the alternative suspect Joseph "Jo-Jo" Brunner, and present five witnesses to support the theory that Brunner was the perpetrator. Appellate courts review matters involving trial strategy deferentially, and trial counsel will be deemed to have acted reasonably if the chosen strategy had some reasonable basis designed to effectuate the client's interest. *Commonwealth v. Miller,* 987 A.2d 638, 653 (Pa. 2009) (*citing Commonwealth v. Puksar*, 951 A.2d 267, 277 (Pa. 2008)). A claim of ineffectiveness will not succeed by comparing, in hindsight, the employed trial strategy with unpursued alternatives. *Puksar*, 951 A.2d at 277 (*citing Commonwealth v. Miller*, 819 A.2d 504, 517 (Pa. 2002)). While appellate courts do not completely disregard the reasonableness of pursuing alternative strategies, the balance tips in favor of finding effectiveness upon determining that trial counsel's decision had a reasonable basis. *Miller*, 987

5

A.2d at 653 (*citing Commonwealth v. Cooper*, 941 A.2d 655 (Pa. 2007); *Pierce*, 527 A.2d at 975).

To be entitled to relief on a claim of ineffectiveness for failure to call a witness, an appellant must demonstrate that the witness: (1) existed; (2) was available and willing to cooperate; (3) was or should have been known to counsel; and, (4) could have provided testimony the absence of which prejudiced him. *Commonwealth v. Johnson*, 139 A.3d 1257, 1284 (Pa. 2016) (*citing Commonwealth v. Birdsong*, 24 A.3d 319, 334 (Pa. 2011)). To show prejudice, the petitioner must demonstrate that there is a reasonable probability that, but for trail counsel's allegedly unprofessional conduct, the result of the proceedings would have been different. *Id.* (*citing Commonwealth v. Baumhammers*, 92 A.3d 708, 725 (Pa. 2014)). Where a petitioner requests an evidentiary hearing, the petition must include a signed certification of each intended witness stating the witness' name, address, date of birth, substance of his or her testimony, and any material documents. 42 Pa.C.S. § 9545(d)(1). Failure to substantially comply renders the witness' testimony inadmissible. *Id.*

The Petitioner theorizes that, because Brunner often sold Alka Seltzer in place of crack cocaine, he made a lot of enemies, including the decedent, whom he had a motive to murder. To support this theory, the Petitioner sought to present Denise Webster as a witness, who would allegedly testify that she was with the decedent before the murder, that the decedent left her home, that she and Brunner constantly argued, and that Brunner claimed to have seen her before the shooting. This testimony would be corroborated by Laverne McCall, who would testify that she saw the decedent walk towards Ridgewood and 54th Street immediately before the shooting, that the decedent was upset at Brunner for selling her fake narcotics, and that Brunner threatened the witness with a revolver on a prior occasion. The Petitioner also sought to present Jeannie

6

Jones, who would testify that she spoke to the deceased eyewitness Cheeri Glen, who allegedly saw Brunner run away from the crime scene after the shooting. The Petitioner finally sought to introduce the testimony of two unidentified males, who allegedly told police that they heard that Brunner was the shooter.

The certifications attached to the PCRA are insufficient to warrant testimony from these witnesses at the evidentiary hearing this Court conducted regarding trial counsel's selected defense. Jones is not a witness to the shooting, and serves only to provide the inadmissible hearsay testimony of the deceased Cheeri Glen. The Petitioner also presents police statements provided by witnesses Webster and McCall, where they each claim that animosity brewed between Brunner and the decedent because Brunner repeatedly sold fake drugs. The Petitioner further submits certifications wherein both Webster and McCall confirm that their original statement was true. While the statements and certifications support the theory that there was animosity between Brunner and the decedent, no certification is sufficient to identify any alternative suspect, let alone Brunner, as the actual shooter. Finally, the Petitioner's failure to identify the two males who spoke to police violates the PCRA's certification requirement. In any event, this Court reviewed the Petitioner's pleadings and exhibits and determined that none of the witnesses claimed to have observed the actual shooting. This evidence, if presented, is insufficient to prevail over the facts presented at trial, where an eyewitness observed the Petitioner shoot the decedent, and where the Petitioner confessed his guilt.

Furthermore, during the evidentiary hearing, trial counsel Francis Carmen, Esq. testified that he was familiar with Brunner based on his investigation prior to trial, that he personally interviewed Jones, and he investigated McCall and Denise Webster. N.T. 3/17/2017 at 11–21. Based on the information he and co-counsel Susan Ricci gathered, including Brunner's prior

record and his whereabouts at the time of the shooting, trial counsel adopted the theory that Stibbins was the shooter. *Id.* at 26–29. As a matter of strategy, trial counsel was concerned that Glen's death impeded any defense implicating Brunner, as she was the only person who could place him at the location of the shooting. *Id.* at 38. Beyond that, trial counsel struggled to develop Brunner's motive for shooting the decedent. While the decedent may have been upset at the Petitioner for selling fake drugs, nothing indicated that the Petitioner was upset with the decedent or had a motive to kill her. *Id.* at 44–45. Trial counsel also felt that, due to his host of legal problems, including having been investigated for the instant shooting, Stibbins had great motive to falsely implicate the Petitioner. *Id.* at 41, 44. These factors, combined with Stibbins' availability for cross-examination, convinced trial counsel to implicate him as the shooter. *Id.* at 41–45.

After hearing trial counsel's testimony, this Court found that trial counsel was not ineffective for pursuing the chosen trial strategy. Significant evidence, including the Philadelphia police's own investigation, pointed to Stibbins as a possible suspect, and trial counsel's theory served the dual purpose of diminishing Stibbins' identification of the Petitioner as the shooter while implicating Stibbins' as a suspect. The Petitioner further fails to demonstrate prejudice for failing to call the witnesses supporting his theory that Brunner was the shooter. None of the suggested witnesses (Webster, McCall, or Jones) witnessed the shooting or saw Brunner near its location. Glen, the only witness who could place Brunner near the scene died prior to trial, rendering her unavailable and her alleged testimony as hearsay. Because of these issues, the purported testimony of these witnesses would do little to advance the Petitioner's theory that Brunner was the shooter.

The Petitioner argues that, had trial counsel investigated Detective Pitts' interrogation techniques, he would have discovered a pattern and practice of coercing individuals into giving false statements, thereby corroborating Aasim Stibbins' recantation. To support this claim, the Petitioner cites the cases of former defendants Unique Drayton, Amin Speaks, and Nefis Pinkney, each of whom could establish Detective Pitts' habitual use of coercive interrogation techniques. The Petitioner bolsters this claim by citing an April 2016 Philadelphia Daily News article documenting the more than $1 million dollars the City of Philadelphia paid to settle claims made against Detective Pitts.

A PCRA petition must, at the very least, describe the evidence that will be presented at a hearing, and the simple reliance of conclusory accusations is insufficient to warrant a hearing. *Commonwealth v. Castro*, 93 A.3d 818, 827 (Pa. 2014). An evidentiary hearing is not meant to function as a fishing expedition for the potential discovery of evidence to support a speculative claim. *Id.* at 827–828 (*citing Commonwealth v. Scott*, 752 A.2d 871, 877 n. 8 (Pa. 2000)). Any new evidence must be producible and admissible, but newspaper articles generally constitute inadmissible hearsay that merely suggests that evidence may exist. *Id* at 825; *Commonwealth v. Perrin*, 108 A.3d 50, 53 (Pa. Super. 2015).

The Petitioner neither alleges that Stibbins was physically coerced by Detective Pitts before giving his statement, nor does he argue that Stibbins would testify that he was. Instead, the Petitioner appears to argue that, because Detective Pitts' may have used coercive interrogation techniques against Pinkney, Drayton, and Speaks in unrelated matters, he must have done the same to Stibbins. The Petitioner sought to call Pinkney, Drayton, and Speaks to testify that Pitts coerced them into giving false statements, and trial counsel to explain his alleged failure to investigate and examine Pitts at trial. The Petitioner failed to attach certifications from

9

any of the witnesses, and merely cites the aforementioned Philadelphia Daily News article and the holdings in each of their cases to support his argument.[2] While the article points to allegations that, if true, had the potential to aid the Petitioner's cause, they are nothing more than inadmissible hearsay in its current form. *See Castro*, 93 A.3d at 828. Mere speculation as to the contents of Drayton's, Speaks', and Pinkney's testimony are similarly insufficient, as the Petitioner fails to sufficiently explain the context of their testimony or how it would meet a hearsay exception.

Even if the Petitioner were permitted to present this evidence in an evidentiary hearing, it would not sway this Court's opinion for want of prejudice. At trial, Stibbins recanted his police statement and testified that detectives fabricated said statement by providing him answers to the questions that he posed. N.T. 10/23/2013 at 56. Stibbins said he did so to avoid being recharged with an unrelated attempted murder. *Id.* at 56–58. Evidence of what action, if any, Detective Pitts took during interrogation would only serve to impeach the truthfulness of Stibbins' police statement, which Stibbins recanted at trial. The jury considered Stibbins' recantation and rejected it.

The Petitioner next alleges that trial counsel was ineffective for failing to secure evidence that he was in police custody at the time he allegedly confessed his guilt to Stibbins and witness Corey Williams. At trial, Williams testified that the Petitioner told himself and Stibbins that he (the Petitioner) "rocked" the decedent, shooting her in the head and chest. N.T. 10/22/2013 at 241–245. Williams surmised that this conversation took place between two and three months after the shooting, during either January or February 2009. *Id.* at 244. The Petitioner claims that

---

[2] The Petitioner acknowledges that Pinkney and Drayton testified at the evidentiary hearing for *Commownealth v. Reed*, 1269 EDA 2013, but was unable to obtain the transcripts.

he was in custody during that timeframe and that the conversation in question could not have taken place.

This argument is frivolous as the parties stipulated that the Petitioner was not in Philadelphia from November 2008 to February 2010. N.T. 10/28/2013 at 73. Where a stipulation is announced in front of a jury, a challenge to counsel's failure to elicit the information stipulated to during testimony is frivolous. *See Commonwealth v. Paddy,* 15 A.3d 431, 459–460 (Pa. 2011). In its Rule 1925(a) opinion, this Court addressed a similar issue where the Petitioner challenged the weight of the evidence based on Williams' testimony. Then, this Court noted that trial counsel cross-examined Williams to this discrepancy, to which he responded that the conversation occurred two months before he gave his statement, in autumn 2010. Rule 1925(a) Opinion at *10; N.T. 10/22/2013 at 228–229. This Court further noted that the Petitioner failed to submit evidence to establish that he was in custody at the time. In the intervening two and one-half years since the Petitioner's direct appeal, he still has yet to submit evidence to support his contention.[3] Nevertheless, the stipulation renders the Petitioner's argument toothless.

The Petitioner argues that trial counsel was ineffective for failing to object to witness Tevin Clark's alleged hearsay testimony. Hearsay is a statement that the declarant does not make while testifying at the current trial or hearing and a party offers that statement in evidence to prove the truth of the matter asserted. Pa.R.E. 801(c)(1)–(2). Hearsay is generally inadmissible. A witness may be impeached by extrinsic evidence where (1) the statement is

---

[3] The Petitioner sought leave to obtain these records in his November 2, 2016 Motion for Discovery. This Court denied that motion for discovery on the basis that the parties stipulated that the Petitioner was in custody at the time of the alleged conversation and that a very similar issue was addressed by both this Court and the Superior Court on direct appeal.

11

disclosed to the witness, (2) the witness had an opportunity to explain or deny the statement, and (3) the opposing party has the opportunity to cross-examine. Pa.R.E. 613(b).

The Petitioner's argument focuses on a brief exchange between the prosecutor and Clark where Clark recounted the instance where Stibbins told him that the Petitioner shot the decedent:

> **Q.** "I have a friend named Aasim. We've been hanging around together for about a year or two. In February of '09 I was at Aasim's house when he told me about the shooting of the lady at 54th and Florence Avenue back in November the year before. Aasim told me that the boy, Brandon, shot the fiend in the head while she was on the phone. Aasim told me that Brandon was with another guy named Aaron but he didn't say what Aaron did. Aasim said that he was out there when this happened and saw what they did. He had just walked up when it happened."
> So, Mr. Clark, my first question is did I get that right? Did I read that accurately?
> **A.** Yes, you read it accurately.
> **Q.** And that's what's on the statement?
> **A.** Yes.
> **Q.** Do you recall that question and answer?
> **A.** No.
> **Q.** Do you recall Aasim telling you what happened to Ms. Charmaine at 54th and Florence?
> **A.** No.
> **Q.** Do you recall him telling you that Brandon and Aaron were involved in her death?
> **A.** No.

N.T. 10/23/2013 at 223–224. This evidence was properly admitted to impeach Stibbins' testimony. Earlier during direct examination, after the prosecutor asked Stibbins whether he recalled telling Clark about the shooting, Stibbins denied ever having that conversation. *Id.* at 125–126. Clark was available to cross-examine, and trial counsel did in fact cross-examine Clark later that day. *Id.* at 235–238. Trial counsel had no basis to object, and accordingly cannot be held ineffective for failing to do so.

The Petitioner finally avers that he is entitled to relief based on the cumulative prejudicial effect of all the aforementioned errors. No number of failed ineffectiveness claims may

12

collectively warrant relief if they fail to do so individually. *Commonwealth v. Reid*, 99 A.3d 470, 520 (Pa. 2014) (*citing Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009)). The Petitioner failed to allege any meritorious ineffective assistance claim. Therefore, there is no basis to evaluate any cumulative prejudicial effect.

For the foregoing reasons, the judgment of this Court should be affirmed.

BY THE COURT,

Barbara A. McDermott, J.

13

**Commonwealth v. Brandon Sawyer, CP-51-CR-0012941-2011**

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing filing upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107
Attn: Samuel Ritterman, Esquire

**Type of Service:**      **DA's Courthouse Assigned Box**

Teri B. Himebaugh, Esq.
2201 Pennsylvania Avenue
#513
Philadelphia, PA 19130

**Type of Service:**      **First Class Mail**

Brandon Sawyer
LM 3143
SCI Houtzdale
209 Institution Drive
Houtzdale, PA 16698

**Type of Service:**      **Certified Mail**

Dated: May 10, 2017

_____
**Joseph Duffy**
**Law Clerk to the**
**Honorable Barbara A. McDermott**